UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   1/27/2021___
```

ANDRES SCAMINACI,

       Plaintiff,

    -against-

OMAR JAFFREY,

       Defendant.

21-cv-321 (MKV)

OPINON & ORDER DENYING
MOTION FOR
PRELIMINARY INJUNCTION

MARY KAY VYSKOCIL, United States District Judge:

  Before the Court is the motion of Plaintiff Andres Scaminaci for a preliminary injunction, ordering Defendant Omar Jaffrey to include Scaminaci in management decisions for their shared investment funds.  For the reasons set forth below, Scaminaci's motion is DENIED.

## I.  BACKGROUND

  Plaintiff Andres Scaminaci and Defendant Omar Jaffrey are co-owners and managers of the Melody Capital family of investment funds (collectively, "Melody") [ECF #1 ("Cmpl.") ¶¶ 1–2; ECF #6 ("Scaminaci Decl.") ¶ 3; *cf.* ECF #18-1 ("Jaffrey Decl.") ¶¶ 4, 7–10].  There are two primary groups of funds: a group of funds that hold a portfolio of wireless communication assets ("Telecom Funds"); and a group of funds that make credit-related investments ("Credit Funds").  Cmpl. ¶ 2; Scaminaci Decl. ¶ 5; Jaffrey Decl. ¶ 11.  Melody Wireless Infrastructure, Inc. ("MWI") is "the company through which the Telecom Funds own their valuable wireless infrastructure assets."  Cmpl. ¶ 4; *accord* Scaminaci Decl. ¶ 7.

  Scaminaci contends that, under its governing documents, Melody is now in its "harvest" period, meaning it is not raising additional funds or making new investments; rather, "the focus of Melody's management and investment teams is on monetizing Melody's assets, including the Telecom Funds, in a way that will maximize their value and provide the highest returns to

Melody's investors." Cmpl ¶ 3; *accord* Scaminaci Decl. ¶¶ 28–30; Def. Opp. at 3. The harvest period for the Telecom Funds began in July 2019. Scaminaci Decl. ¶ 29. It "must be completed by July 1, 2021 (a date that was originally July 1, 2020, but was extended . . .)." Scaminaci Decl. ¶ 30; *but see* Jaffrey Decl. ¶ 20 ("The Melody Telecom Funds are presently not in harvest, as Scaminaci contends, but rather are still in their post-commitment term. Under the governing documents of the Telecom Funds, there is no strict deadline for dissolution.").

A number of years after co-founding Melody, Scaminaci and Jaffrey had a personal and professional falling out. Scaminaci Decl. ¶ 23. In 2018, with the end of the investment period for Melody in sight, Scaminaci and Jaffrey agreed that each could launch independent funds, which they both did. *Id.* ¶¶ 23–24; Jaffrey Decl. ¶¶ 12–15. Scaminaci describes Jaffrey's fund, Melody Investment Advisors L.P. ("MIA"), as a "competing fund[]" that "invest[s] in the exact same type of assets" as MWI. Scaminaci Decl. ¶ 56, 25. He accuses Jaffrey of attempting to "blur the lines" between MIA and MWI in marketing materials in order to piggyback on MWI's reputation, as well as "diverting" business opportunities from MWI to MIA. Scaminaci Decl. ¶¶ 44, 26–27. Scaminaci also accuses Jaffrey of delaying the sale of MWI so that Jaffrey can continue this arrangement. *Id.* ¶ 39. Jaffrey denies these accusations. Jaffrey Decl. ¶¶ 16, 25. He also suggests that Scaminaci's firm, Melody Capital Group ("MCG"), is a "parallel business" to the Melody Credit Funds. *Id.* ¶ 12.

On March 30, 2020, Scaminaci and Jaffrey entered into a contract "intended to govern the operations of Melody" after the end of the investment period. Scaminaci Decl. ¶ 31; *see* Jaffrey Decl. ¶ 17. The 2020 Agreement provides:

> Neither Omar Jaffrey nor Andres Scaminaci nor any entities controlled by either partner shall be authorized to cause Melody Capital Partners, LP or Melody Capital Management, LLC or any Investment Fund, Easement Fund, Melody Wireless, Inc. or other entity controlled or managed by Melody Capital Partners, LP or by Melody

> Capital Management, LLC to enter into any legally binding agreement or arrangement without the prior consent of the other partner; provided that the partners may jointly delegate to managers of Melody Capital Partners, LP the authority to enter into certain agreements on behalf of such entities."

[ECF #7-2 (the "2020 Agreement") § 3(c)].

Shortly after Scaminaci and Jaffrey executed the 2020 Agreement, Scaminaci attempted to sell "the Telecom Funds' assets," including MWI. Scaminaci Decl. ¶ 37, 46. "[D]uring the summer of 2020," Scaminaci "prepare[d] materials to present to potential buyers." *Id.* ¶ 47. There is no dispute that, as part of his "efforts" to sell MWI, Scaminaci executed some number of nondisclosure agreements ("NDAs") with potential buyers. Scaminaci Decl. ¶¶ 48, 70 (the "information I provided [about MWI] was . . . protected by NDAs"); Jaffrey Decl. ¶¶ 18, 31. There is also no dispute that Scaminaci did not obtain Jaffrey's "prior consent" to execute those NDAs. 2020 Agreement § 3(c); *see* Jaffrey Decl. ¶¶ 18, 31.

Scaminaci "purportedly signed [the NDAs] on behalf of Melody, but actually signed on behalf of [Scaminaci's separate investment firm,] MCG." Jaffrey Decl. ¶ 31; *see id.* ¶ 18. MCG is not one of the entities listed in Section 3(c) of the 2020 Agreement. That is, MCG is not one of the entities that Scaminaci was prohibited from "caus[ing] . . . to enter into any legally binding agreement or arrangement without [Jaffrey's] prior consent." 2020 Agreement § 3(c). However, MCG "has no ownership or rights in MWI" such that it could have authority to execute an NDA regarding MWI's confidential information. Jaffrey Decl. ¶ 18.

Scaminaci obtained an offer from a firm named Digital Colony. Scaminaci Decl. ¶¶ 48, 51. The deal Scaminaci negotiated included a "post-transaction role" for Scaminaci and a financial interest in the business after the sale. *Id.* ¶ 52. Scaminaci presented the offer to Jaffrey and Melody's largest investors in a letter on July 30, 2020. *Id.* ¶ 53; Jaffrey Decl. ¶ 28. In that letter, Scaminaci admitted that—because he would have a financial interest in, and be employed

3

by, the proposed purchaser—he had a conflict of interest in the proposed deal.  *See* Scaminaci Decl. ¶ 54; Jaffrey Decl. ¶ 29.  He agreed "not to take part in Melody's evaluation of the Digital Colony offer."  Scaminaci Decl. ¶ 54; *see* Jaffrey Decl. ¶ 29.

Jaffrey argues that Scaminaci secretly arranged the Digital Colony deal to benefit himself as both seller and buyer.  Scaminaci asserts that he took it upon himself to arrange the sale of MWI only after he "repeatedly approached Jaffrey" to "discuss the actions that [they] needed to take to [sell MWI]" but "Jaffrey refused to engage" because, according to Scaminaci, Jaffrey was delaying the sale of MWI to "grow his own competing fund[,]" MIA.  Scaminaci Decl. ¶¶ 38, 56.  However, Jaffrey asserts that "Scaminaci was fully aware" that, in late 2019, Jaffrey had created a plan and timeline for the sale of MWI, which contemplated hiring "market-leading professionals" to run an "auction-style sale process beginning in late 2020 [and] an ultimate transaction in early 2021."  Jaffrey Decl. ¶¶ 24, 26.  Jaffrey also asserts that the Digital Colony offer "significantly undervalued MWI."  *Id.* ¶ 28.

After Jaffrey received Scaminaci's July 30 letter, MWI retained Hogan Lovells LLP, over Scaminaci's objection, to investigate the Digital Colony offer and Scaminaci's conflict.  Jaffrey Decl. ¶¶ 33, 34; Scaminaci Decl. ¶¶ 60, 62.  "As a result of Hogan's analysis," Jaffrey and the company's general counsel decided not to consider the Digital Colony offer and to "preclud[e]" Scaminaci "from participating in the sale of MWI."  Jaffrey Decl. ¶ 34.  This admitted decision to exclude Scaminaci from participating in the sale of MWI is at the heart of Scaminaci's motion for a preliminary injunction.

Scaminaci argues that retaining Hogan was part of Jaffrey's plan to "exclude [Scaminaci] from the Melody Funds," as well as derail the sale of MWI.  Scaminaci Decl. ¶¶ 71, 78.  Scaminaci asserts that Jaffrey hired Hogan because "he knew he could control" the outcome of

its investigation and that Hogan has "unquestioningly adopted Jaffrey's concocted claim" that Scaminaci was trying to buy MWI and, therefore, is completely conflicted out of the process of selling MWI. *Id.* ¶ 66. Scaminaci maintains that, since he "no longer [has] any agreement or understanding with Digital Colony or any other potential purchaser" of MWI, there is "no basis" to exclude him from the sales process. *Id.* ¶ 79.

Jaffrey contends that Scaminaci's exclusion remains necessary "to protect the integrity of the sales process." *Id.* ¶ 34. Jaffrey asserts that, if Scaminaci were involved, "prospective bidders [would] fear that Scaminaci continues to have a buy-side conflict of interest with Digital Colony or other parties." *Id.* ¶¶ 34, 41. Although Digital Colony is not under consideration as a potential buyer, Jaffrey asserts that all of the contracts Scaminaci executed with potential buyers had "included 'lock-up' provisions that required the counter-parties to include Scaminaci in any proposal to acquire MWI." *Id.* ¶ 31. In an email dated November 24, 2020, Hogan rejected Scaminaci's argument that he was no longer conflicted and should, therefore, be involved in the MWI sales process [ECF #22-30; 16-2].

The parties dispute the scope of Scaminici's exclusion from the management of Melody entities. Scaminaci sometimes asserts that Jaffrey has excluded him from all of "the Melody Funds." *Id.* ¶ 71. Elsewhere, Scaminaci asserts that Jaffrey has completely excluded him from the "management of the Telecom Funds." *Id.* ¶ 80. However, all of the specific examples of his exclusion that Scaminaci offers appear to relate to the sale of MWI. *See id* ¶¶ 80–81. Meanwhile, Jaffrey insists that Scaminaci has been excluded from the MWI sales process only and continues "to participate in all other aspects of Melody's business," including management decisions for the Telecom Funds that do not relate to the MWI sales process. Jaffrey Decl. ¶ 34. Jaffrey specifically avers that Scaminaci recently approved "the distribution of a dividend" to the

limited partners of the Telecom Funds.  *Id.*  Jaffrey also avers in his declaration that he "intend[s] to present the final proposed sale to Scaminaci for his consent at the conclusion of a fair and rigorous sales process."  *Id*. ¶ 36.

On January 14, 2021, Scaminaci filed a complaint [ECF #1 ("Cmpl.")] and a motion for a preliminary injunction [ECF #4, 6, 7, 8 ("Pl. Mem.")].  He seeks an order "to prevent" Jaffrey "from continuing to wrongfully exclude Scaminaci from the management of Melody Capital . . . in violation of Scaminaci's rights under a clear and unambiguous contract between the parties."  Pl. Mem." at 1.  Specifically, Scaminaci proposes that the Court issue a preliminary injunction that enjoins Jaffrey from causing any of the Melody entities to "enter into any legally binding agreement or arrangement without the prior consent of Plaintiff" and requires Jaffrey to promptly "disclose . . . any and all legally binding agreements and arrangements into which" he has caused any of the Melody entities to enter [ECF #4-1].

The same day, the Court issued an Order directing Jaffrey to respond by January 19, 2021 and scheduling a hearing for January 22, 2021 [ECF #10].  Jaffrey timely filed his response in opposition to the motion for a preliminary injunction [ECF #14, 16, 17, 18 ("Def. Opp.")].  The Court held a hearing on January 22, 2021.

On the record at the hearing, Scaminaci's counsel admitted that Scaminaci breached the 2020 Agreement when he entered into NDAs with potential buyers for MWI.  *See* Transcript of January 22, 2021 Hearing ("Tr.") at 10:17–22.  Scaminaci's counsel acknowledged that, while Scaminaci signed the NDAs on behalf of "an unrelated company," he should be "deem[ed]" to have signed on behalf of Melody.  *Id*. at 10:18–20.  Scaminaci's counsel argued, however, that his client's "technical breaches of th[e] agreement" were "not material breaches."  *Id*. at 10:21, 18:9–10; *accord id.* at 17:13.  He argued that the NDAs Scaminaci signed were simply "ancillary

6

. . . to procuring offers," *id.* at 17:9–10; complaining, meanwhile, that Jaffrey has since executed "55" NDAs, *id.* at 20:15, and completely "excluded [Scaminaci] from [the] sales process," *id.* at 23:18.[1]  Jaffrey's counsel argued that the "admission that Mr. Scaminaci breached the very agreement he's suing to enforce" is fatal to Scaminaci's motion for a preliminary injunction.  *Id.* at 26:9–12.

## II.     LEGAL STANDARD

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005).  To obtain a preliminary injunction, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, the movant must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of equities tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction.  *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015).

## III.     DISCUSSION

The Court finds that Scaminaci failed to carry his burden to show a likelihood of success on the merits.  Scaminaci argues that he is entitled to injunctive relief because Jaffrey has deprived Scaminaci of bargained-for management rights in violation of the 2020 Agreement.  Pl. Mem. at 16.  To succeed on the merits of his contract claim, Scaminaci must show his own adequate performance of the contract.  But Scaminaci breached the 2020 Agreement, as his

---

[1] In an Order dated January 22, 2021, the Court granted Jaffrey's request to redact that MWI has executed "55" NDAs, because the precise number of prospective buyers involved in an ongoing sales process is sensitive business information [*see* ECF #36].  However, since Scaminaci's counsel repeatedly cited the number at the January 22 hearing, it is now part of the public record.

counsel admitted and could not credibly dispute.  The Court cannot find—on the record before it

at this time—that Scaminaci's breaches were immaterial.

To succeed on a breach of contract claim under New York law, which governs the 2020

Agreement pursuant to a choice-of-law provision in the contract, the plaintiff must show (1) the

existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach

of contract by the defendant; and (4) damages.  *Roswell Capital Partners LLC v. Alt. Const.*

*Tech.*, 2009 WL 222348, at *8 (S.D.N.Y. Jan. 30, 2009); *Eternity Global Master Fund Ltd. v.*

*Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004).  The existence of the agreement is

undisputed.  It provides:

> Neither Omar Jaffrey nor Andres Scaminaci nor any entities controlled by either
> partner ***shall be authorized to cause*** Melody Capital Partners, LP or Melody
> Capital Management, LLC or any Investment Fund, Easement Fund, Melody
> Wireless, Inc. or other entity controlled or managed by Melody Capital Partners,
> LP or by Melody Capital Management, LLC to ***enter into any legally binding***
> ***agreement or arrangement without the prior consent of the other partner***;
> provided that the partners may jointly delegate to managers of Melody Capital
> Partners, LP the authority to enter into certain agreements on behalf of such entities.

2020 Agreement § 3(c) (emphasis added).

Scaminaci argues that he "has demonstrated to a virtual certainty that he will succeed on

the merits" of his contract claim, Pl. Mem. at 18, but the Court disagrees.[2]  Scaminaci stresses

that "Jaffrey indisputably has breached" the 2020 Agreement by causing MWI to execute NDAs

with prospective buyers, an agreement to retain Hogan Lovells as counsel, and an agreement to

retain Goldman Sachs to run the auction process, all without Scaminaci's consent.  Pl. Mem. at

19; *see* Scaminaci Decl. ¶¶ 80–81.  However, to succeed on his contract claim, Scaminaci must

show not only that Jaffrey breached, "but also that [Scaminaci] 'performed what he was

---

[2] To show a likelihood of success on the merits, Scaminaci needs to show only "that the probability of his prevailing
is better than fifty percent."  *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988).

obligated to do under the terms of the contract.'"  *Roberts v. Karimi*, 251 F.3d 404, 407 (2d Cir. 2001).  The record establishes, and Scaminaci admits, that Scaminaci breached the 2020 Agreement during the course of his efforts to sell MWI.  *See* Scaminaci Decl. ¶¶ 48, 70; Jaffrey Decl. ¶¶ 18, 31; Tr. at 10:17–22.

Scaminaci cannot obtain a preliminary injunction requiring Jaffrey to adhere to a contract that Scaminaci materially breached.  *See Marisa Cristina, Inc. v. Freis*, 646 F. Supp. 252, 254 (S.D.N.Y. 1986).  Thus, Scaminaci asks the Court to find that his admitted breaches of the 2020 Agreement were not material.  The Court cannot make that finding on the record before it and, therefore, must deny Scaminaci's request for extraordinary relief.

Specifically, Scaminaci argues that the NDAs he executed were "not material breaches" of the 2020 Agreement because those contracts were merely "ancillary . . . to procuring offers" to purchase MWI.  Tr. at 18:9–10, 17:9–10.  However, Scaminaci accuses Jaffrey of "indisputabl[e]" and "flagrant violation[s]" of the 2020 Agreement based on Jaffrey's execution of similar contracts.  Pl. Mem. at 19, 10.  For example, at the January 22, 2021 hearing, Scaminaci's counsel repeatedly argued that Jaffrey has "breached [the 2020 Agreement] at least 55 times."  Tr. at 22:17; *see id.* at 15:10–11, 20:10–12, 21:9–11.  Scaminaci's counsel was citing the 55 NDAs Jaffrey has executed on behalf of MWI as part of the ongoing sales process—*i.e.*, precisely the same kind of contracts Scaminaci executed with potential buyers before he obtained the Digital Colony offer.  Similarly, the agreement Jaffrey executed to retain Goldman Sachs to run the auction process might also be described as "ancillary . . . to procuring offers" to purchase MWI.  Tr. at 18:10.  The Court is not suggesting that Jaffrey's alleged breaches are not material.  Rather, the Court declines to find, at this stage of the litigation, that Scaminaci's admitted similar breaches are not material.

Scaminaci also argues that, by excluding Scaminaci from management decisions, Jaffrey breached his fiduciary duties to Scaminaci as his partner in a joint venture.  The Court finds that Scaminaci similarly failed to carry his burden to show a likelihood of success on the merits of this claim.  As an initial matter, Jaffrey persuasively argues that Scaminaci's breach of fiduciary duty claim appears to be duplicative of his contract claim.  Under Delaware law, which both parties agree governs the fiduciary claim, "any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous."  *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).  At this stage in the litigation, Scaminaci has not identified any unique facts underlying his fiduciary claim.

Second, the doctrine of unclean hands poses a significant obstacle to Scaminaci's success on the merits of his fiduciary claim.  *See Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 128–29 (2d Cir. 2009) (explaining that the doctrine of unclean hands bars equitable relief when the moving party has engaged in improper conduct similar to the alleged improper conduct from which he seeks relief).  Scaminaci argues that Jaffrey has completely excluded Scaminaci from the sales process for MWI "in flagrant violation of Jaffrey's . . . fiduciary duties."  Pl. Mem. at 10.  But Jaffrey strenuously argues that Scaminaci precipitated the situation by secretly arranging a buy-side offer from Digital Colony, as well as soliciting similar offers from other potential buyers, and Jaffrey avers that he will present his final proposal for the sale of MWI to Scaminaci for approval, just as Scaminaci ultimately presented the Digital Colony offer to Jaffrey.  Jaffrey Decl. ¶¶ 26, 27, 36.  The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."  *Motorola Credit Corp.*, 561 F.3d at 129 (internal citation omitted).  It appears that both parties have violated their obligations, and while

perhaps Jaffrey's violations have been more flagrant and extensive, only Scaminaci comes to this Court seeking extraordinary relief.  The Court finds that Scaminaci failed to carry his burden to show a likelihood of success on the merits of his fiduciary claim.

The Court further finds that Scaminaci failed to show irreparable harm based on his delay in seeking injunctive relief.  Scaminaci persuasively argues that depriving him of bargained-for management rights constitutes irreparable harm.  *See Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 114 (2d Cir. 2003); *Espiritu Santo Holdings, LP v. L1bero Partners, LP*, 2019 WL 2240204, at *16 (S.D.N.Y. May 14, 2019), *aff'd*, 789 F. App'x 288 (2d Cir. 2020).  Even assuming the deprivation is extensive as Scaminaci alleges, which Jaffrey convincingly disputes, Scaminaci's delay in moving for a preliminary injunction militates against finding irreparable harm.  The law is clear that a "failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."  *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (*Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F. Supp. 602, 609 (S.D.N.Y. 1979)).  By Scaminaci's own account, began to exclude him from the "Telecom Funds' management" in July 2020.  Scaminaci Decl.  ¶ 55.  The Court finds Scaminaci waited at least two months to seek a preliminary injunction after it was unmistakably clear that Jaffrey remained determined to exclude Scaminaci from the MWI sales process, notwithstanding Scaminaci's arguments that his conflict had been cleansed by the exclusion of Digital Colony [ECF #22-30; 16-2].  Def. Opp. 14; Jaffrey Decl. ¶ 38; Tr. at 19:12–14.  Thus, the Court concludes that Scaminaci has not carried his burden to show irreparable harm.

IV.    CONCLUSION

For the reasons set forth above, Scaminaci's motion for a preliminary injunction is

DENIED.

**SO ORDERED.**

**Date:   January 27, 2021**
        **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

12