UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDRES SCAMINACI,

                Plaintiff,

-against-

OMAR JAFFREY,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/2022

21-cv-321 (MKV)

OPINON & ORDER
GRANTING
MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

      The Court previously denied the motion of Plaintiff Andres Scaminaci for a preliminary injunction, ordering Defendant Omar Jaffrey to include Scaminaci in management decisions for their shared investment funds. Now before the Court is Jaffrey's motion to dismiss this case. For the reasons set forth below, Jaffrey's motion is GRANTED.

## I. BACKGROUND[1]

### A. The Melody Funds

      Plaintiff Andres Scaminaci and Defendant Omar Jaffrey are co-owners and managers of the Melody Capital family of investment funds (collectively, "Melody") [ECF No 49 ("AC") ¶¶ 21–22]. There are two primary groups of funds: a group of funds that hold a portfolio of wireless communication assets ("Telecom Funds"); and a group of funds that make credit-related

---

[1] The facts are taken from the Amended Complaint [ECF No. 49 ("AC")] and several documents incorporated therein by reference, including the 2018 Agreement [ECF No. 60-1], the 2020 Agreement [ECF No. 60-2], and a letter, dated October 6, 2020, from Melody's outside counsel Hogan Lovells to Scaminaci [ECF No. 7-16]. *See Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020). The Court also takes judicial notice of certain earlier filings and undisputed facts that came before the Court in connection with Scaminaci's earlier motion for a preliminary injunction, which the Court denied [ECF No. 38 ("Op.")], including that Scaminaci controls a fund called MCG and that, in his effort to sell MWI, Scaminaci executed nondisclosure agreements ("NDAs") with potential buyers. *See Perkins v. Comm'r*, 970 F.3d 148, 152 n.2 (2d Cir. 2020).

investments ("Credit Funds"). AC ¶ 22. Melody Wireless Infrastructure, Inc. ("MWI" or "Melody Wireless") holds the valuable assets of the Telecom Funds. AC ¶ 25.

As a private investment vehicle that must return capital to its investors, Melody does not hold investments indefinitely. *See* AC ¶¶ 2, 3, 42. Rather, Melody is in its "harvest" period, meaning it is not raising additional funds or making new investments. AC ¶ 3. The "focus of Melody's management and investment teams is on monetizing Melody's assets, including the Telecom Funds, in a way that will maximize their value and provide the highest returns to Melody's investors." AC ¶ 3.

**B. The 2018 Agreement**

After successfully co-managing Melody for a number of years, Scaminaci and Jaffrey had a personal and professional falling out. AC ¶ 34. In 2018, with the end of Melody's investment period in sight, Scaminaci and Jaffrey "agreed to pursue investment strategies separately going forward." AC ¶ 34. To that end, they entered into the Melody Flagship Business Plan (the "2018 Agreement"). AC ¶ 35. The 2018 Agreement permitted Scaminaci and Jaffrey to launch their own funds, although it provided that each would "receive a '5% carry share'" of the other's new investment companies. AC ¶ 36. Specifically, the 2018 Agreement provides that "Scaminaci will have 5% carry share of all future SPVs/Businesses in the TMT effort created by Jaffrey,"[2] and "Jaffrey will have a 5% carry share of all future businesses created by Scaminaci" [ECF No. 60-1 ("2018 Agreement") at 3].

Jaffrey launched Melody Investment Advisors L.P. ("MIA"). AC ¶ 36. Scaminaci alleges that MIA is an "SVP/Business in the TMT effort created by Jaffrey" and that Jaffrey has

---

[2] According to Scaminaci, "TMT" means "Telecommunications, Media & Technology" [ECF No. 59 ("Pl. Opp.") at 4].

"acknowledged" as much. AC ¶ 36. Scaminaci further alleges that MIA "invests in the exact same type of assets -- wireless telecommunications infrastructure -- as Melody Wireless." AC ¶ 37. Scaminaci accuses Jaffrey of "diverting corporate opportunities and resources from Melody to MIA." AC ¶ 37; *see* AC ¶ 38, 39. Scaminaci launched two funds of his own, including Melody Capital Group ("MCG") [ECF No. 38 at 2].

### C. The 2020 Agreement

In March 2020, Scaminaci and Jaffrey entered into a contract intended to govern the operations of Melody during the harvest period (the "2020 Agreement"). AC ¶¶ 10, 41. The 2020 Agreement does not allow either partner to enter into any "legally binding agreement or arrangement" on behalf of Melody, including on behalf of MWI, without the other partner's "prior consent." It provides:

> Neither Omar Jaffrey nor Andres Scaminaci nor any entities controlled by either partner shall be authorized to cause Melody Capital Partners, LP or Melody Capital Management, LLC or any Investment Fund, Easement Fund, Melody Wireless, Inc. or other entity controlled or managed by Melody Capital Partners, LP or by Melody Capital Management, LLC to enter into any legally binding agreement or arrangement without the prior consent of the other partner; provided that the partners may jointly delegate to managers of Melody Capital Partners, LP the authority to enter into certain agreements on behalf of such entities.

[ECF No. 60-2 ("2020 Agreement") § 3(c)].

### D. Scaminaci's Efforts To Sell MWI

After Scaminaci and Jaffrey executed the 2020 Agreement, Scaminaci arranged for a sale of MWI without Jaffrey's involvement. *See* AC ¶¶ 42, 46, 49. Scaminaci asserts that he had "no choice but to" sell MWI without Jaffrey's involvement because Melody was in its harvest period, Scaminaci "believ[ed] that the market for Melody Wireless' assets [was] primed for a value-maximizing sale," and, Scaminaci alleges, "Jaffrey refused to engage" when Scaminaci approached Jaffrey about selling MWI. AC ¶¶ 42, 43, 46. Scaminaci alleges that Jaffrey was

refusing to sell MWI because "maintaining control over [MWI] and its assets was critical to growing Jaffrey's personal fund, MIA." AC ¶ 43.

"[D]uring the summer of 2020, Scaminaci worked with a number of Melody employees and outside advisors to prepare materials to present to potential buyers." AC ¶ 46. In his efforts to sell MWI, Scaminaci executed a number of nondisclosure agreements ("NDAs") with potential buyers. *See* AC ¶ 55, 68; Op. at 3. Scaminaci did not obtain Jaffrey's "prior consent" to execute those NDAs. Op. at 3 (quoting 2020 Agreement § 3(c)). Scaminaci signed the NDAs about the sale of MWI on behalf of his separate fund, MCG, which did not have any ownership or rights in MWI. AC ¶ 68; Op. at 3. He asserts in the Amended Complaint that he did not purport to sign on behalf of Melody. AC ¶ 68. However, he acknowledges that the NDAs "contained a provision requiring" buyers "to contact Melody only through Scaminaci." AC ¶ 68.

Scaminaci obtained an offer of $1.3 billion from a firm named Digital Colony. AC ¶¶ 47, 48. The deal Scaminaci negotiated included a "post-transaction role for Scaminaci" and a "financial interest" in the new business. AC ¶ 48. On July 30, 2020, Scaminaci "presented" the offer from Digital Colony to Jaffrey for the first time in a letter to Jaffrey and Melody's biggest investors. AC ¶ 49. In that letter, Scaminaci "disclosed" that he had a conflict of interest in the proposed sale, since he would also be employed by and have an ownership interest in the buyer. AC ¶ 49. As such, he stated that he "would not take part in Melody's evaluation of the Digital Colony offer." AC ¶ 49.

### E. MWI Retains Hogan Lovells

After the July 30 letter, Jaffrey retained Hogan Lovells LLP as outside counsel for MWI, over Scaminaci's objection, to investigate the Digital Colony offer and Scaminaci's conflict. *See* AC ¶¶ 52, 53. In a letter dated October 6, 2020, Hogan Lovells recommended that Digital Colony

4

be excluded from the sales process for MWI [ECF No. 7-16 ("Hogan Letter")]. It stated that Scaminaci had engaged in a "clandestine effort" to improperly benefit from the sale of MWI as both buyer and seller. Hogan Letter at 1. Citing the results of Hogan's investigation, Jaffery decided to exclude Scaminaci from the sales process for MWI. AC ¶ 55.

In the Amended Complaint, Scaminaci alleges that Jaffrey retained Hogan Lovells as part of a "plan" to "exclude Scaminaci from the Melody Funds and derail the sale process for" MWI. AC ¶ 55. Scaminaci alleges that it was a "sham" investigation designed to give a "patina" of independence to Jaffrey's "concocted claim that Scaminaci was trying to acquire" MWI. AC ¶¶ 7, 52, 53, 54. Scaminaci further alleges that Jaffrey has "repeated Hogan Lovells' false statements -- as well as a host of other misrepresentations and untruths -- to third parties . . . to smear and discredit Scaminaci." AC ¶ 55.

### F. The Current Posture

In January 2021, Scaminaci initiated this action by filing a complaint and a motion for a preliminary injunction [ECF Nos. 1 ("Cmpl."), 4, 6–8]. The original complaint asserted several claims, including a claim for breach of the 2020 Agreement. It alleged that Jaffrey "breached the 2020 Agreement by causing Melody to enter into binding agreements relating to the sale of Melody Wireless" without "Scaminaci's 'prior consent.'" Cmpl. ¶ 67. Scaminaci sought an injunction requiring Jaffrey to include Scaminaci in the sales process for MWI.

The Court held a hearing on the motion for a preliminary injunction. On the record at the hearing, Scaminaci's counsel admitted that Scaminaci breached the 2020 Agreement when he entered into NDAs with potential buyers for MWI [ECF No. 39 ("Tr.") at 10:17–22]. Scaminaci's counsel acknowledged that, while Scaminaci signed the NDAs on behalf of "an unrelated company," he should be "deem[ed]" to have signed on behalf of Melody. Tr. at 10:18–20.

Scaminaci's counsel argued, however, that Scaminaci's "technical breaches of th[e] agreement" were "not material breaches." Tr. at 10:21, 18:9–10; *accord id.* at 17:13. He argued that the NDAs Scaminaci signed were merely "ancillary . . . to procuring offers," but Jaffrey was completely "exclude[ing]" Scaminaci "from [the] sales process." Tr. at 17:9–10, 23:18. Jaffrey's counsel argued the "admission that Mr. Scaminaci breached the very agreement he's suing to enforce" was fatal to Scaminaci's motion for a preliminary injunction. Tr. at 26:9–12. Jaffrey also represented that he intended to present the final proposed sale to Scaminaci for his consent at the conclusion of the sales process. Op. at 5–6.

The Court denied Scaminaci's motion for a preliminary injunction [ECF No. 38 ("Op.")]. In June 2021, MWI was sold for $1.625 billion, which is hundreds of millions of dollars more than the Digital Colony offer. AC ¶¶ 61, 62. Jaffrey represents that Scaminaci approved the sale, signed the sale documents, and received a substantial payout [ECF No. 54 ("Def. Mem.") at 1], and Scaminaci does not appear to disagree.

After the sale, Scaminaci filed an Amended Complaint [ECF No. 49 ("AC")], asserting four claims. First, he asserts a claim for breach of the 2020 Agreement. AC ¶¶ 74–82. Second, he asserts a claim for breach of the 2018 Agreement. AC ¶¶ 83–91. Third, he asserts a claim for breach of fiduciary duty. AC ¶¶ 91–96. Finally, he asserts claims for defamation and defamation per se. AC ¶¶ 97–108.

Jaffrey moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Amended Complaint [ECF Nos. 53, 54 ("Def. Mem."), 61]. Jaffrey argues that Scaminaci lacks standing to assert a claim for breach of the 2018 Agreement, or the claim is not ripe for review,

and that Scaminaci otherwise fails to state a claim. Scaminaci opposes the motion to dismiss [ECF Nos. 59 ("Pl. Opp."), 60].

## II.     LEGAL STANDARD

### A. Rule 12(b)(1)

Federal courts may only adjudicate "cases" and "controversies." U.S. Const. art. III, § 2. A court must dismiss a claim if it lacks jurisdiction to adjudicate it. *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). To invoke a federal court's subject matter jurisdiction, a plaintiff must have standing, and the plaintiff's claim must be ripe. *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393, 429 (2d Cir. 2013).

### B. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, the pleading must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable. *Id*. The pleading must raise "more than a sheer possibility that a [party] has acted unlawfully." *Id*.

## III.     DISCUSSION

### A. Scaminaci Fails To State a Claim for Breach of the 2020 Agreement.

Scaminaci fails to state a claim for breach of the 2020 Agreement because he fails plausibly to allege his own adequate performance of the contract. Scaminaci alleges that Jaffrey "breached the 2020 Agreement by causing Melody to enter into binding agreements relating to the sale of Melody Wireless, including the retention of legal counsel and investment bankers, without

soliciting or obtaining Scaminaci's 'prior consent.'" AC ¶ 78. But Scaminaci's own allegations and admissions establish that Scaminaci first breached the 2020 Agreement.

New York law governs the claim for breach of the 2020 Agreement pursuant to a choice-of-law provision in the contract. 2020 Agreement at 5. "To make out a viable claim for breach of contract" under New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004). The 2020 Agreement provides:

> Neither Omar Jaffrey nor Andres Scaminaci nor any entities controlled by either partner **shall be authorized to cause** Melody Capital Partners, LP or Melody Capital Management, LLC or any Investment Fund, Easement Fund, Melody Wireless, Inc. or other entity controlled or managed by Melody Capital Partners, LP or by Melody Capital Management, LLC to **enter into any legally binding agreement or arrangement without the prior consent of the other partner**; provided that the partners may jointly delegate to managers of Melody Capital Partners, LP the authority to enter into certain agreements on behalf of such entities.

2020 Agreement § 3(c) (emphasis added).

Based on his own allegations and admissions, Scaminaci was the first of the partners to breach the 2020 Agreement by "causing Melody to enter into binding agreements relating to the sale of Melody Wireless" without Jaffrey's "prior consent." AC ¶ 78; *see* AC ¶¶ 46, 55, 68; Tr. at 10:17–22. Specifically, Scaminaci executed a number of NDAs with potential buyers. AC ¶¶ 55, 68. As Scaminaci's counsel admitted, Scaminaci should be "deem[ed]" to have signed the NDAs on behalf of Melody. Tr. at 10:18–20. Scaminaci also alleges that he engaged "outside advisors to prepare materials to present to potential buyers," although he does not say whether those engagements were "legally binding . . . arrangements." AC ¶ 46.

Scaminaci argues that his admitted breaches of the 2020 Agreement were not material, and it is inappropriate for the Court to pass on materiality at the pleading stage. Pl. Opp. at 18 (citing

*VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 382–83 (S.D.N.Y. 2014)). It is clear on the face of the Amended Complaint and the record in this case, however, that if Scaminaci's breaches were not material, then neither were Jaffrey's. Scaminaci has argued that the NDAs he executed were "not material breaches" of the 2020 Agreement because those contracts were merely "ancillary . . . to procuring offers" to purchase MWI. Tr. at 18:9–10, 17:9–10. But, as the Court previously pointed out, Scaminaci accused Jaffrey of "indisputabl[e]" and "flagrant violation[s]" based on Jaffrey's execution of a greater number of NDAs. Op. at 9. Scaminaci alleges that Jaffrey breached based on his "retention of transactional counsel and investment bankers," AC ¶ 69, which was presumably for the purpose of "procuring offers." But Scaminaci also "worked with . . . outside advisors." AC ¶ 46. Finally, Scaminaci argues that he was blameless because he ultimately "presented" the offer to Jaffrey for approval, AC ¶ 49, and Jaffrey, by contrast, was "permanently excluding Scaminaci" from the sale of MWI, AC ¶ 51. However, at this stage, there seems to be no dispute that Scaminaci signed off on the $1.625 billion sale.

Scaminaci also argues that, even if Scaminaci did materially breach the 2020 Agreement, Scaminaci still has a claim against Jaffrey. Pl. Opp. at 19. Scaminaci is confused. He cites cases that stand for the proposition that Jaffrey waived any claim for breach of the 2020 Agreement by failing to repudiate it after learning of Scaminaci's breach. That may be true, but it is beside the point, since Jaffrey is not the one asserting a claim. Scaminaci simply cannot state a claim for breach of contract because he cannot plausibly allege his own adequate performance.

B. **Scaminaci' Lacks Standing To Assert a Claim for Breach of the 2018 Agreement.**

Scaminaci asserts a claim for breach of the 2018 Agreement on the ground that "Jaffrey has refused to acknowledge Scaminaci's 5% carry share in MIA." AC ¶ 73. Scaminaci seeks a judgment declaring that Jaffrey is required by the 2018 Agreement to provide Scaminaci with his

9

5% carry share of MIA.  AC ¶ 89.  However, Scaminaci lacks standing to assert a claim for breach of the 2018 Agreement because he fails to allege an injury in fact.

"It is well established that 'a plaintiff must demonstrate standing for each claim he seeks to press.'"  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (alteration omitted) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)).  He has the "burden" to "clearly allege facts demonstrating standing," including an injury in fact.  *Ross v. Bank of Am., N.A.(USA)*, 524 F.3d 217, 222 (2d Cir. 2008).  A plaintiff's alleged injury must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  A "threatened injury must be *certainly impending* to constitute injury in fact."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original).

Scaminaci fails to allege any facts demonstrating actual or imminent injury in connection with the 2018 Agreement.  Scaminaci alleges that "Jaffrey appears" to "have taken the position that he is no longer bound by the terms of the 2018 Agreement."  AC ¶ 13.  Specifically, "Jaffrey has refused to acknowledge Scaminaci's 5% carry share in MIA" despite Scaminaci's "specific demands" that Jaffrey do so.  AC ¶¶ 13, 73, 86.  Scaminaci acknowledges, however, Jaffrey has never "expressly" "dispute[d] Scaminaci's entitlement to that asset."  Pl. Opp. at 1; *see id.* at 16 (Jaffrey has not stated that Scaminaci "has no right to his carry share").

In his brief, Scaminaci asserts that he has suffered an injury because Jaffrey deprives Scaminaci of information about MIA to which Scaminaci is entitled based on his equity in the company.  Pl. Opp. at 13.  Scaminaci further asserts in his brief that he is injured by his inability to, *inter alia*, use his carry share "as collateral for a loan," "sell or assign his interest in the carry share," or donate it to charity.  Pl. Opp. at 15.  But none of these asserted injuries are alleged in

the Amended Complaint. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001) (A "complaint cannot, of course, be amended by the briefs in opposition to a motion to dismiss."). Thus, Scaminaci has not met his "burden" to "clearly allege facts demonstrating" an injury. *Ross*, 524 F.3d at 222.

The 2018 Agreement provides that Scaminaci has a "5% carry share of all future SPVs/Businesses in the TMT effort created by Jaffrey." 2018 Agreement at 3. Scaminaci alleges that MIA is such a business and that Jaffrey has "acknowledged" as much. AC ¶ 36. If, in the future, Jaffrey fails to include Scaminaci when it issues equity in MIA, or threatens imminently to do so, Scaminaci may have standing to assert a claim. However, the injury alleged in the Amended Complaint, that Jaffrey "*appears*" to take the position that he is not bound by the 2018 Agreement, AC ¶ 13 (emphasis added), is purely conjectural, *Spokeo*, 578 U.S. at 339.

### C. Scaminaci Fails To State a Claim for Breach of Fiduciary Duty.

Scaminaci asserts a claim against Jaffrey for breach of fiduciary duty. Scaminaci alleges that "[a]s joint venturers, Jaffrey and Scaminaci owe each other fiduciary duties of utmost good faith, fairness and honesty." AC ¶ 94. Scaminaci further alleges that "Jaffrey breached his duties to Scaminaci" by "diverting" opportunities and resources from Melody to MIA. AC ¶ 95. Jaffrey argues that Scaminaci's claim for breach of fiduciary duty is duplicative of his claim for breach of the 2020 Agreement and, in any event, Scaminaci's allegations show that Jaffrey honored his fiduciary duties. Def. Mem. at 17–18. Jaffrey also argues that joint venturers owe fiduciary duties to their enterprise only, and not to each other. Def. Mem. at 19.

In the Amended Complaint, Scaminaci unmistakably alleges that Jaffrey violated both the 2020 Agreement and his fiduciary duties by excluding Scaminaci from the sale of MWI and other management decisions. AC ¶¶ 49, 67. Under Delaware law, which both parties agree governs the

fiduciary duty claim, Def. Mem. at 17 n.12; Pl. Opp. at 20 n.6, "any fiduciary claims arising out of the same facts that underlie the contract obligations" are "foreclosed as superfluous." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010). Thus, Scaminaci cannot state a claim for breach of fiduciary duty based on conduct that Scaminaci alleges breached the 2020 Agreement.

Scaminaci, however, also alleges that Jaffrey breached his fiduciary duty to Scaminaci by "diverting" opportunities and resources, including the "time and attention of Melody's personnel," from Melody to MIA. AC ¶¶ 39, 95. Contrary to Jaffrey's assertion, as his own cited authority makes clear, joint venturers do owe fiduciary duties "*in dealing with each other* with respect to the enterprise." *J. Leo Johnson, Inc. v. Carmer*, 38 Del. Ch. 579, 584, 156 A.2d 499, 502 (1959) (emphasis added). But fiduciary duties can be limited by contract. *Cf. Fannin v. UMTH Land Dev., L.P.*, 2020 WL 4384230, at *19 (Del. Ch. July 31, 2020). In the 2018 Agreement, Scaminaci agreed that Jaffrey could pursue competing investment opportunities and "build a team within Melody to support this effort." 2018 Agreement at 2–3. Scaminaci cannot assert a fiduciary claim based on alleged conduct consistent with that agreement. Furthermore, in connection with the claim for breach of the 2020 Agreement, the Amended Complaint alleges that, "since [Jaffrey] excluded Scaminaci from Melody's governance and management" in breach of that contract, Jaffrey has been running roughshod over the interest of Melody and its investors in favor of his personal interests and the interests of [MIA]." AC ¶ 72. In the light of this allegation, even a breach of fiduciary duty claim based on Jaffrey allegedly placing the interest of MIA above those of Melody is arguably duplicative of the contract claim.

### D. Scaminaci Fails To State a Claim for Defamation.

Scaminaci asserts claims for defamation and defamation per se. The parties agree that New York law governs these claims. *See* Def. Mem. at 20 n.14; Pl. Opp. at 22. Under New York law,

a plaintiff must adequately allege five elements: (1) a defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability. *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). "A statement that tends to injure another in his or her trade, business or profession is defamatory per se." *Fuji Photo Film U.S.A.*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009).

There is no actionable defamation claim here. No defamation claim will lie if, based on the allegations in the complaint, the allegedly defamatory statements are substantially true. *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012). The statements need not be completely accurate, so long as the "gist" is true. *Printers II, Inc. v. Professionals Publishing, Inc.*, 784 F.2d 141, 146 (2d Cir. 1986). Moreover, statements of opinion are not actionable, since they are not assertions of fact capable of being proven false. *Biro*, 883 F. Supp. 2d at 459–60. Thus, expressions of opinion are protected even if they are "unreasonable" and "vituperous." *Id*. at 460 (quoting *Hotchner v. Castillo–Puche*, 551 F.2d 910, 913 (2d Cir. 1977)).

Scaminaci asserts that Jaffrey defamed Scaminaci to investors, harming his reputation and his professional prospects. AC ¶ 9. However, the allegedly defamatory statements were either substantially true, according to the Amended Complaint, or statements of opinion, or both. For example, Scaminaci alleges that Jaffrey repeated the "characteriz[ation]" by Hogan Lovells of Scaminaci's effort to sell MWI as a "clandestine . . . scheme." AC ¶¶ 54, 55. The Amended Complaint makes clear that Scaminaci "worked with" others to arrange a sale of MWI without Jaffrey's knowledge. *See* AC ¶¶ 46, 49. The color commentary, characterizing the conduct as a clandestine scheme, does not render the statement a false assertion of fact. On the contrary, such "subjective characterizations of [Scaminaci's] behavior" are "nonactionable expressions of opinion." *Galanova v. Safir*, 138 A.D.3d 686, 687 (2d Dep't 2016). Thus, Jaffrey's alleged

characterizations of Scaminaci's efforts to sell MWI as "disturbing" and "improper" are not actionable. *See id.* The Court has carefully considered all of the other allegations in the Amended Complaint, as well as the arguments in Scaminaci's brief, and concludes that he fails to state a claim for defamation.

## IV.   CONCLUSION

For the reasons set forth above, Jaffrey's motion to dismiss the Amended Complaint is GRANTED. Scaminaci's claim for breach of the 2018 Agreement is dismissed without prejudice. All remaining claims are dismissed with prejudice. The Clerk of Court is respectfully requested to terminate the motion pending at docket entry 53 and to close this case.

**SO ORDERED.**

**Date:  March 31, 2021**  
**New York, NY**

_/s/ Mary Kay Vyskocil_  
**MARY KAY VYSKOCIL**  
**United States District Judge**